UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TD INVESTMENTS, LLC,
    Plaintiff,

vs.

NATIONAL CITY BANK, *now known as* PNC BANK, NA, *et al.*,
    Defendants.

Case No. 1:21-cv-337
Dlott, J.
Litkovitz, M.J.

ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on PNC Bank, NA's ("PNC") motion to dismiss plaintiff's complaint (Doc. 33), PNC's motion for sanctions (Doc. 35), Orlando Carter's motion for electronic case filing (Docs. 40, 63), TD Investments' motion to stay and for evidentiary hearing (Doc. 41), TD Investments' verified motion to have Rachel Israel withdraw as counsel (Doc. 42), Carter's motion to strike all public filings made by PNC attorney Rachel Israel due to lack of personal knowledge (Doc. 53), Carter's motion to strike (Doc. 61), Carter's motion for court order requiring CBST Acquisition ("CBST") and all defendants to appear and answer (Doc. 64), TD Investments' motion for sanctions against Rachel Israel for continuing deceit and defendant PNC for the initial deceit (Doc. 67), and Carter's motion to strike all pleadings by defendant PNC Bank for intentional and blatant deception (Doc. 70). Numerous responses and replies have been filed (Docs. 44, 45, 46, 47, 51, 52, 56, 57, 58, 59, 62, 65, 66, 69).

I. Background

    A. Facts Alleged[1]

Plaintiff TD Investments seeks to acquire intellectual property from defendant CBST. While performing due diligence related to the proposed purchase, TD Investments "discovered

---

[1] Unless otherwise specified, all factual allegations are taken from plaintiff's verified first amended complaint for declaratory judgment and injunctive relief (Doc. 10).

that certain Defendants allege that two (2) loans were originated by CBST and its majority owner, Defendant Orlando Carter." (Doc. 10 at PAGEID 187). Specifically, according to the amended complaint, the United States Department of Justice ("DOJ") and PNC believe that "CBST originated a $4 million loan and issued a related $4 million loan guaranty to PNC on December 31, 2004" for which PNC sent CBST a demand letter on February 24, 2005. (*Id.* at PAGEID 187). CBST and Carter dispute the existence of this loan.

As for the second loan, PNC "informed Defendant USDOJ on August 21, 2006, via its Office of the U.S. Bankruptcy Trustee, that it originated a loan in the amount of $8,810,805.65 with Carter and CBST." (*Id.*) Carter and CBST dispute the existence of this loan.

The amended complaint further alleges that in the years since 2006, PNC, the DOJ, and the United States Office of the Comptroller of Currency ("OCC") have made statements inconsistent with the existence of these loans. Therefore, "an internal federal controversy currently exists regarding PNC's different debt claims regarding CBST" which "destroys TD's confidence in said the (sic) financials of CBST and PNC, thus placing a damper on the acquisition of CBST's intellectual property." (Doc. 10 at PAGEID 188-89). "Neither the USDOJ nor PNC has ever brought any action against Carter or CBST to recover or seek payment for the loans in the amounts of $4 million or $8,810,805.65." (*Id.* at PAGEID 189).

TD Investments seeks a declaratory judgment that: (1) "[t]he only debt originated by and between PNC and CBST is the $250,000 Amended Note originated on December 31, 2003"; (2) "PNC's February 24, 2005 Demand Letter . . . seeking repayment from CBST on a $4 million loan is fake, fictitious, and fraudulent"; (3) "PNC's claim that PNC originated a loan in the amount of $4 million with CBST and Carter, and that CBST issued a guaranty on the $4 million loan is fake, fictitious, and fraudulent"; (4) "PNC's claim that PNC originated a loan in the

amount of $8,810,805.65 with CBST and Carter is fake, fictitious both (sic) and fraudulent"; (5) "There is/was no $4 million loss related to a $4 million loan allegedly originated between CBST and PNC"; and (6) "Debts in the amounts of $4 million and $8,810,805.65 as alleged by PNC were never originated and do not exist and therefore are not required to be listed on any financial statements related to Carter and CBST." (*Id.*)

### B. Procedural History

Plaintiff filed its original complaint in the United States District Court for the Northern District of Illinois. (Doc. 1). Over plaintiff's objection, the Northern District of Illinois transferred the case to this District because "[t]he underlying facts in this case have already been litigated both civilly and criminally in United States District Courts for the Southern District and Northern District of Ohio and, despite Plaintiff TD Investment LLC's efforts to cast doubt on the prior adjudications, are not in dispute." (Doc. 30 at PAGEID 314).

Defendant PNC moved to dismiss this action for lack of jurisdiction (Doc. 33) and for sanctions (Doc. 35). Defendant Orlando Carter moved to obtain electronic filing rights (Docs. 40, 63), to strike all public filings made by PNC attorney Rachel Israel due to lack of personal knowledge (Doc. 53), to strike PNC's filings related to sanctions (Doc. 61), for an order requiring CBST (which Carter owns) and all defendants to appear in this matter and for PNC to pay CBST's attorney fees and costs for such appearance (Doc. 64), and to strike all pleadings by PNC for intentional and blatant deception (Doc. 70). Plaintiff TD Investments moved to stay briefing on PNC's motion to dismiss for lack of jurisdiction and for "an evidentiary hearing to depose witnesses" regarding "PNC Bank's initial and continuing deception on this court and the US Department of Justice." (Doc. 41 at PAGEID 383). Plaintiff TD Investments further moved

3

to have Rachel Israel withdraw as counsel for defendant PNC (Doc. 42) and for sanctions "against Rachel Israel for continuing deceit and defendant PNC for the initial deceit" (Doc. 67).

The District Judge referred all motions except summary judgment motions to the undersigned. (Doc. 54). These motions are now ripe for consideration.

**II. Rule 12(b)(1) and Rule 12(b)(6) Standards**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79.

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal if the court lacks subject-matter jurisdiction. Rule 12(b)(1) motions involve either a facial attack or factual attack. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). A facial attack "questions merely the sufficiency of the pleading." *Genetek Bldg. Prods., Inc v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When

reviewing a facial attack, a court must apply the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Global Technology*, 807 F.3d at 810.

"When a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume that the plaintiff's factual allegations are true." *Id.* Rather, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673. F.3d 430, 440 (6th Cir. 2012)). "As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction." *Id.*

**III. Subject Matter Jurisdiction**

"Considering whether jurisdiction to hear a case exists is the 'first and fundamental question presented by every case brought to the federal courts.'" *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (quoting *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000)). As courts of limited jurisdiction, federal courts possess only the power authorized in the Constitution or statutes. *Id.* Thus, the burden to establish jurisdiction lies with the party asserting jurisdiction. *Id.*

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Thus:

> To satisfy Article III standing, the plaintiff must demonstrate that (1) he or she "suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'"; (2) the injury is "'fairly traceable to the challenged action of the defendant'"; and (3) it is likely "'that the injury will be redressed by a favorable decision.'" *Id*. (quoting *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). The injury inquiry is thus twofold where a plaintiff requests injunctive

5

> relief, as it requires plaintiff to show both "past injury and a real and immediate threat of future injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013); *see also Gaylor*, 582 F. App'x at 579 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) ("The 'threat' of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone.").

*Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019). At the pleading stage, the plaintiff must allege facts demonstrating each element of standing. *Spokeo*, 578 U.S. at 338.

In this case, TD Investments alleges that it seeks to acquire intellectual property from defendant CBST. While performing due diligence related to the proposed purchase, TD Investments "discovered conflicting allegations regarding the origination of certain debt amounts related to CBST and PNC" which "create uncertainty regarding the acquisition of said assets from CBST." (Doc. 10 at PAGEID 199). TD Investments essentially asks this Court to protect it from a future business decision it may or not make in evaluating whether and under what circumstances to acquire intellectual property from CBST. TD has suffered no injury in fact and therefore lacks standing.

In addition, although TD Investments seeks injunctive and declaratory relief, it alleges no injury traceable to or relationship of any kind with PNC or any defendant other than CBST. It purports to allege an "existing federal controversy between the justice and treasury departments" in 2005 and/or 2017 (Doc. 10 at PAGEID 206), but TD Investments played no role whatsoever in any such alleged "controversy" and did not even exist prior to 2021. (Doc. 7-7 at PAGEID 143).[2] Therefore, TD Investments lacks standing, and no case or controversy exists over which this Court may assert jurisdiction.

---

[2] According to the Illinois Secretary of State, TD Investments Group LLC was formed on January 28, 2021, approximately five weeks before initiating this action. (Doc. 7-7 at PAGEID 143).

IV. **Motions for Sanctions**

Defendant PNC and plaintiff TD Investments both filed motions for sanctions. (Docs. 35, 67). To provide context for these motions, the Court must review the extensive prior related litigation.

This case has a long and tortured history. On May 7, 2008, a grand jury issued an eleven-count, twenty-three-page indictment charging defendant Orlando Carter with mail fraud, bank fraud, conspiracy to commit mail, wire and bank fraud, making false statements to the Small Business Administration, bankruptcy fraud, and making false oaths in bankruptcy. *United States v. Carter*, No. 1:08-cr-51 (S.D. Ohio), Doc. 1. After a seventeen-day trial, a jury found Carter guilty of every count charged in the indictment. *Id.* at Doc. 75.

Count three of the indictment charged Carter with defrauding Fifth Third Bank. As part of the conduct underlying count three, the indictment alleged that Carter, as owner of Dynus Corporation and its subsidiaries or divisions CBST Acquisition and CBS Technologies, falsely claimed certain municipalities as clients for its purported telecommunications business. Specifically, the indictment alleged, in small part:

> 15. During the approximate time period 2004 and 2005 defendant ORLANDO CARTER, through Dynus, attempted to enter into a business relationship with Butler County, Ohio (Butler County). On December 31, 2004, a financial institution, National City Bank, operating through a subsidiary known as National City Commercial Capital Corporation (National City) wire transferred $4,000,000.00 to a Dynus controlled account in the name of CBS Technologies. On the same day, James Smith, an employee of Dynus, guaranteed National City that an Opinion of Counsel Letter from a duly authorized attorney for Butler County would be supplied to National City by on or before January 30, 2005. The Opinion of Counsel Letter was to provide information deemed relevant to assure National City concerning the legitimate nature of the transactions between Dynus, Butler County, and National City. If Dynus failed to secure the Opinion of Counsel Letter to National City, James Smith promised that CBS Technologies would immediately return the $4,000,000.00 (along with accrued interest) to National City.

> 16. Dynus failed to provide National City the promised Opinion of Counsel Letter. On or about February 24, 2005, National City sent a letter to James Smith as the General Manager of CBS Technologies demanding that the $4,000,000.00 be returned by Dynus to National City. Dynus failed to return the $4,000,000.00 to National City.
>
> * * *
>
> 21. It was further part of the scheme and artifice to defraud Fifth Third Bank that defendant ORLANDO CARTER and other senior Dynus employees intentionally failed to disclose to the auditors . . . various items of material information affecting the financial condition of Dynus, and in particular, CBST Acquisition, LLC. Among the items of information that defendant ORLANDO CARTER and others intentionally failed to disclose to the auditors were the guarantee by James Smith that $4,000,000.00 would be returned to National City if no Opinion of Counsel Letter was obtained from Butler County by January 30, 2005; that no such letter was obtained as required by National City; and that National City had demanded on or about February 24, 2005, that $4,000,000.00 be returned to National City. The failure to disclose to the auditors that Dynus was in default of the promise to return the $4,000,000.00 to National City was material to the preparation of the financial statements.

*United States v. Carter*, No. 1:08-cr-51 (S.D. Ohio), Doc. 1 at PAGEID 8-10.

Following the jury's guilty finding on all charges, including count three, the judge who presided over Carter's criminal trial sentenced him to incarceration for 180 months, five years of supervised release, and restitution of nearly $4.9 million to Fifth Third Bank and another entity. *Id.* at Doc. 103. The Sixth Circuit affirmed the convictions, and the Supreme Court denied certiorari. *United States v. Carter*, 483 F. App'x 70 (6th Cir.), *cert. denied*, 568 U.S. 1038 (2012). The Court denied Carter's motion for new trial, motion for reconsideration, § 2255 motion to vacate, motion to alter judgment, second motion for reconsideration, motion to cease and desist, and motion to set aside judgment. *United States v. Carter*, No. 1:08-cr-51 (S.D. Ohio), Docs. 150, 172, 185, 209, 220.

In 2015, Carter requested from PNC (which subsequently acquired National City Bank) records relating to the $4 million transfer[3] between National City and Dynus or CBST, but PNC

---

[3] Over the years, Carter and the Courts have referred to this transaction interchangeably as a "loan" or "guaranty."

8

failed to provide responsive records. *In re Orlando Carter*, No. 18-3080 (6th Cir. Apr. 26, 2018) (filed in *United States v. Carter*, No. 1:08-cr-51 (S.D. Ohio) as Doc. 222). Carter initiated a consumer complaint against PNC to which the Office of the Comptroller of Currency responded in January 2017 that it could not satisfy his request that "the bank validate a $4,000,000 debt with CBST Acquisition, LLC." *Id.* at PAGEID 4726.

Based on this lack of documentation, Carter sought "to raise ten grounds for relief, asserting that the government presented 'fake and bogus' bank documents and withheld evidence that the guaranty never existed." *Id.* In denying Carter's latest attempt to challenge his criminal conviction, the Sixth Circuit opined:

> At trial, the government presented the $4 million guaranty signed by James Smith as General Manager of CBS Technologies and the demand letter from National City Bank, which were authenticated and accepted into evidence without objection. Multiple witnesses testified about the existence of the guaranty.[4] Carter's defense at trial was that he did not know about the guaranty. Carter took a different approach in his first motion to vacate, asserting that the guaranty was invalid. In this motion and in his prior motion for an order authorizing a second or successive motion to vacate, Carter contends that the guaranty never existed because his and the OCC's requests to PNC Bank failed to turn up any documents relating to the guaranty.

*Id.* (footnote added). The Sixth Circuit then concluded that "the failure of a successor bank to produce records in response to requests about matters more than ten years in the past, viewed in

---

[4] The judge who presided over Carter's criminal trial also noted the extensive evidence presented:

> Jim Smith and Karin Verbruggen both testified that Carter knew about the guaranty and that National City Bank would be demanding the return of the funds if Dynus did not secure the opinion of counsel letter. In fact, Verbruggen told Carter in late January 2005 that "in about a week we're gonna have to give the money back if we don't get the opinion signed." Carter told Verbruggen not to discuss the Butler County deal, the guaranty, or National City Bank's demand to return the loan proceeds with the auditors. Smith testified that he and Carter agreed to conceal the guaranty and National City Bank's demand from the auditors because of their belief that revealing this information would have negatively affected the audit.

*Carter v. United States*, No. 1:08-cr-51, 2014 WL 3955107, at *6 (S.D. Ohio Aug. 13, 2014) (internal citations omitted).

9

light of the trial evidence demonstrating the existence of the guaranty" was insufficient to invalidate his conviction. *Id.*

Since 2015, Carter/Dynus/CBST and one of his co-conspirators have inundated this Court with civil complaints seeking a ruling that the guaranty never existed. *See, e.g., Carter v. United States Attorney's Office,* No. 1:16-cv-530 at Doc. 22 (S.D. Ohio) (incorporating the OCC's letter as part of a "Notice of Deception"); *Carter v. United States Department of Justice*, No. 1:17-cv-248 (S.D. Ohio); *Carter v. National City Bank*, No. 1:17-cv-508 (S.D. Ohio); *CBST Acquisition, LLC v. Department of Justice*, No. 1:18-cv-162 (S.D. Ohio); *Carter v. Comm'r*, No. 1:18-cv-400 (S.D. Ohio); *Carter v. PNC Bank*, No. 1:18-cv-706 (S.D. Ohio); *Rogers v. National City Bank*, No. 1:18-cv-825 (S.D. Ohio); *Rogers v. PNC Bank*, No. 1:18-cv-889 (S.D. Ohio); *CBST Acquisition, LLC v. PNC Bank NA*, No. 1:19-cv-06 (S.D. Ohio). Indeed, Carter, while incarcerated at the Federal Correctional Institution at Elkton filed a complaint in the Northern District of Ohio seeking "an order declaring that plaintiff's company, CBST Acquisition, LLC, did not provide a legal and binding loan guaranty in 2004 to re-pay $4 million provided to the company by defendants." *Carter v. PNC Bank*, No. 4:15-cv-372 (N.D. Ohio) (copy filed in this case as Doc. 7-4 at PAGEID 122). All of these cases have been dismissed.

After dismissing the complaint in *CBST Acquisition, LLC v. PNC Bank NA*, No. 1:19-cv-06 (S.D. Ohio Dec. 10, 2019) (copy filed in this case as Doc. 7-1), the District Judge emphatically stated:

> In the case at bar, [CBST's lawyer] refiled claims that have been dismissed repeatedly. Indeed, the Complaint in this case very closely mirrors previously dismissed Complaints (right down to the typographical errors) and reiterates much of the unusual language contained in Carter's prior *pro se* filings. Thus, refiling these claims was objectively unreasonable and [CBST's lawyer], as a licensed attorney, reasonably should have known that the claims pursued are frivolous.

10

> Plaintiff's filings have forced both the Defendants and the Court to expend time and resources adjudicating the frivolous, previously-dismissed, time-barred allegations presented, yet again. In what can only be considered an act of grace, this Court will not impose sanctions at this juncture. However, [CBST's lawyer], his client's principal (Carter), and all affiliated entities are hereby notified that **any further filings involving these allegations will result in sanctions pursuant to Rule 11(b) and/or 28 U.S.C. § 1927, including but not limited to payment in full of Defendants' attorneys' fees and costs.**

*Id.* at PAGEID 105.

PNC now moves for sanctions (Doc. 35) against plaintiff TD Investments, plaintiff's CEO David Day, plaintiff's counsel H. Nasif Mahmoud, defendant Orlando Carter, and defendant CBST for violating the District Judge's December 10, 2019 order in *CBST Acquisition, LLC v. PNC Bank NA*, No. 1:19-cv-06 (S.D. Ohio). In support of its motion, PNC notes the similarity of the current allegations to those Carter and CBST previously raised and the similarity of the relief sought. (Doc. 35 at PAGEID 37-38). In addition, PNC offers evidence that the metadata from documents submitted by TD Investments' counsel establish they were drafted by the same individual using the same word processing software as those submitted by Carter. (Doc. 35 at PAGEID 39-40). Because PNC has made a preliminary showing that TD Investments and its counsel are working with Carter to circumvent the District Judge's prior order, the District Judge may wish to rule on the sanctions motion. Thus, this Court will stay the ruling on PNC's motion for sanctions (Doc. 35) subject to the District Judge's ruling on this report and recommendation and re-referral of PNC's sanctions motion.

TD Investments filed its own motion for sanctions, entitled "sanctions motion against Rachel Israel for continuing deceit and defendant PNC for the initial deceit." (Doc. 67 at PAGEID 588). In it, TD Investments simply restates the same challenge to the existence of the guaranties litigated as part of Carter's criminal conviction and relitigated repeatedly since that time. (Doc. 67 at PAGEID 588-594). Indeed, the "new evidence" cited in the sanctions motion

11

is an email from an assistant Butler County prosecuting attorney attaching a "Judgment Entry in favor of Butler County against PNC's predecessor, National City Commercial Capital Corporation case number CV 2005 11 3612" and noting that "[b]y order of court, Butler County was done with this issue fifteen years ago." (Doc. 67-1 at PAGEID 603). The email provides that Butler County "will not answer your question as to whether we referred your allegations regarding the alleged statements of Rachel Israel, PNC Attorney to the Attorney General" and states:

> I note that you sir, apparently carbon copied the Attorney General and Orlando Carter (Noted as CBST Acquisition LLC Owner) in your original correspondence. Mr. Carter should already be very familiar with the referenced litigation as Mr. Carter's corporation, CBST was a named party in the case. Perhaps he can further explain the issues to you.

(*Id.*). Based on the evidence offered in TD Investments' motion, the Court finds no basis for sanctions against either Israel or PNC.

**V. Remaining Motions**

In view of this Court's recommendation that the motion to dismiss be granted for lack of subject matter jurisdiction, Carter's motion to obtain electronic case filing rights (Doc. 40), TD Investments' verified motion to stay briefing schedule and conduct evidentiary hearing (Doc. 41), TD Investments' motion to have attorney Rachel Israel withdraw as counsel for defendant (Doc. 42), Carter's motion to strike all public filings made by PNC attorney Rachel Israel due to lack of personal knowledge (Doc. 53), Carter's motion to strike (Doc. 61), Carter's request for status on motion to obtain electronic filing rights (Doc. 63), Carter's motion for order requiring CBST and all defendants to appear and answer (Doc. 64), and Carter's motion to strike PNC's pleadings (Doc. 70) are denied.

## IT IS THEREFORE ORDERED THAT:

1. Orlando Carter's motion to obtain electronic case filing rights (Doc. 40) is **DENIED**;

2. TD Investments' verified motion to stay briefing schedule and conduct evidentiary hearing (Doc. 41) is **DENIED**;

3. TD Investments' motion to have attorney Rachel Israel withdraw as counsel for defendant (Doc. 42) is **DENIED**;

4. Orlando Carter's motion to strike all public filings made by PNC attorney Rachel Israel due to lack of personal knowledge (Doc. 53) is **DENIED**;

5. Orlando Carter's motion to strike (Doc. 61) is **DENIED**;

6. Orlando Carter's request for status on motion to obtain electronic filing rights (Doc. 63) is **DENIED**;

7. Orlando Carter's motion for order requiring CBST and all defendants to appear and answer (Doc. 64) is **DENIED**;

8. Carter's motion to strike all pleadings by defendant PNC for intentional and blatant deception on this court (Doc. 70) is **DENIED;**

9. The ruling on PNC's motion for sanctions (Doc. 35) is **STAYED** pending the District Judge's ruling on this report and recommendation and re-referral of PNC's sanctions motion;

10. TD Investments' motion for sanctions (Doc. 67) is **DENIED**.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant PNC's motion to dismiss plaintiff's amended complaint (Doc. 33) be **GRANTED**.

Date: 11/19/2021

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TD INVESTMENTS, LLC,<br>    Plaintiff,<br><br>    vs.<br><br>NATIONAL CITY BANK, *now known*<br>*as* PNC BANK, NA, *et al*.,<br>    Defendants. | Case No. 1:21-cv-337<br>Dlott, J.<br>Litkovitz, M.J. |

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).